**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RAQUEL BERMUDEZ,**

                    **Plaintiff,**

**-vs-**                                                             **Case No. 6:07-cv-1492-Orl-31GJK**

**EQUIFAX INFORMATION SERVICES,**
**LLC,**

                    **Defendant.**

---

# ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 40) filed by the Defendant, Equifax Information Services, LLC ("Equifax"), and the response (Doc. 49) filed by the Plaintiff, Raquel Bermudez ("Bermudez").

**I.    Background**[1]

In May 2002, Bermudez provided her Social Security number, employment history and other personal financial information to employees at a Seminole County auto dealership for purposes of a credit check. Shortly thereafter, dealership employees fraudulently used Bermudez's information to incur debt in her name with Mitsubishi Motors Credit Association ("MMCA"). When the MMCA debt went unpaid, it was reported to the major credit reporting agencies, including Equifax, negatively impacting Bermudez's credit rating.

---

[1] The following information is taken from the Complaint (Doc. 1) and is not disputed by the Defendant.

Bermudez contacted the credit reporting agencies to dispute the debt and alert the agencies that she had been the victim of identity theft. She contends that she was eventually able to convince the other major agencies to take the debt off of her credit report, but as of the date she filed this suit, Equifax had not yet done so. On August 9, 2007, Bermudez filed the instant suit, alleging that Equifax had violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.,* either negligently (Count IV)[2] or intentionally (Count V). Bermudez also asserted a claim against Equifax for common law defamation (Count VI).

## II.     Standards

### A.     Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Whether a fact is material depends on the substantive law of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If there is an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof, that party must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Summary judgment is mandated against the non-moving party who thereafter fails to present sufficient evidence to establish a genuine issue of fact for trial. *Id.* at 322, 324-25.

---

[2] The first three counts of the complaint were asserted against MMCA, which reached a settlement with Bermudez.

In this review, the Court must consider all inferences drawn from the underlying facts in a light most favorable to the non-moving party, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. If an issue of material fact exists, the court must not decide it, but rather, must deny summary judgment and proceed to trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

### B. Fair Credit Reporting Act

The Fair Credit Reporting Act ("FCRA" or the "Act") requires, *inter alia*, that whenever a consumer reporting agency, such as Equifax, prepares a consumer report, "it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The Act does not make reporting agencies strictly liable for all inaccuracies in the reports they prepare. *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991). Where a consumer notifies an agency that he or she disputes the completeness or accuracy of any item in his or her file, the Act imposes an additional obligation: the agency must conduct a "reasonable reinvestigation" to determine whether the item is inaccurate and either record the item's status or delete it within 30 days. 15 U.S.C. § 1681i.

### C. Analysis

<u>Statute of Limitations</u>

The FCRA requires that any action to enforce liability created under the Act must be brought within the earlier of (1) two years of the plaintiff's discovery of the violation that is the basis for the liability, or (2) five years of the violation itself. 15 U.S.C. § 1681p. The identity theft itself occurred more than five years before the filing of this suit, and it appears that Bermudez

became aware that the inaccurate information – *i.e.*, the MMCA debt – was showing up on her credit report within a few months thereafter. Bermudez attempts to avoid the statute of limitations by arguing that each republication of inaccurate information by Equifax after August 9, 2005 – *i.e.*, within two years of the filing date of this suit – creates a new cause of action for violations that occurred prior to that date. (Doc. 49 at 5-6).[3] However, Bermudez provides no legal support for this argument, which is contrary to the plain language of the statute, at least when applied to the types of claims at issue here.

According to Equifax, Bermudez disputed the MMCA debt with Equifax several times, including in October 2002. (Doc. 40 at 6). However, any cause of action arising from the October 2002 communication is barred by the statute of limitations. Bermudez also complains that Equifax failed to delete the MMCA debt from her report in response to a Universal Data Form ("UDF") sent to the agency on December 9, 2004. Again, however, any cause of action arising from this alleged failure arose more than two years before this suit was filed and is barred.

Reasonable Procedures

To prevail on a claim under 15 U.S.C. § 1581e(b), a consumer must show that (1) a credit reporting agency published an inaccurate report to a third party; (2) the agency publishing the report failed to follow reasonable procedures to ensure the maximum possible accuracy of its reports; and (3) the agency's failure to follow reasonable procedures caused actual damages to the consumer. *Enwonwu v. Trans Union, LLC*, 164 Fed. Appx. 914 (11th Cir. 2006) (unpub). At least for purposes of this motion, Equifax does not dispute that it published Bermudez's credit report

---

[3] In her response, Bermudez refers to August 5 as the pertinent date, but the instant suit was filed in state court on August 9, 2007, not August 5. (Doc. 3 at 53).

with inaccurate information – specifically, with the information that she owed money to MMCA that she had failed to pay. Equifax does contend that Bermudez cannot establish the latter two elements.

Equifax spends a substantial portion of its motion describing the procedures it uses in preparing a credit report. Bermudez does not challenge the reasonableness of those procedures or, except as detailed below, argue that Equifax failed to follow them in this case. Bermudez argues that the fact that Equifax continued to report the MMCA debt on her credit report after receiving notice of the identity theft is, itself, evidence that Equifax failed to follow reasonable procedures. (Doc. 49 at 8). Bermudez is incorrect. That fact, standing alone, says nothing about the procedures that preceded the error.

Bermudez's second argument is based on a document generated by Equifax. The parties agree that Bermudez disputed the MMCA debt to Equifax in January 2006. As a result, Equifax sent an Automated Consumer Dispute Verification ("ACDV") to MMCA on January 16, 2006. Bermudez contends that the ACDV itself shows that Equifax failed to follow reasonable procedures. Bermudez contends that the ACDV was "miscoded," in that it only sought "reinvestigation and verification of the [MMCA] account as belonging to Bermudez, its status and the previous credit data reported by MMCA, instead of notifying MMCA that Bermudez and her counsel had disputed the account based upon fraud, forgery and identity theft." (Doc. 49 at 10). Assuming *arguendo* that the ACDV was miscoded, the Court fails to see any way in which Equifax's failure to provide this information to MMCA in this particular document was itself

unreasonable or evidence that Equifax's procedures were unreasonable. Bermudez offers no explanation of or legal support for this argument, which therefore fails.[4]

Bermudez's argument as to damages is similarly unconvincing. She argues that she was damaged by being denied credit on several occasions due to the presence of the MMCA debt on her credit report. However, as Equifax points out (Doc. 40 at 7-9), the evidence produced by Bermudez on this point does not support her claims: According to its denial letter, JC Penney rejected Bermudez's request for a credit card because it could not verify her home phone number, while Sam's Club did so because it was unable to verify her residence. Dillards' denial letter shows the company relied on credit reports from agencies other than Equifax. And while the letters from Circuit City and Chase Bank do state that they used Equifax, they do not state that the MMCA debt is what caused the denial. Bermudez had several (accurate) black marks on her credit history at the time she was rejected for these cards – including two bankruptcy filings and a "charged-off" Washington Mutual credit card. Bermudez has not produced any evidence from which a reasonable jury could conclude that, but for the presence of the MMCA debt on her report, her credit application would have been granted by either Circuit City or Chase Bank.[5]

Bermudez's evidence as to non-economic damages is similarly lacking, consisting only of her own vague testimony that she suffered anxiety and lost weight as a result of "trying to correct

---

[4]Bermudez makes similarly opaque arguments as to a number of other documents generated by Equifax, repeatedly asserting (without explanation) that the absence of fact "X" from document "Y" shows that Equifax was not following reasonable procedures or conducting a reasonable reinvestigation, or both. (Doc. 49 at 14-17). These arguments do no merit extended discussion.

[5]Bermudez also asserts that she was unable to purchase a home due to Equifax's reporting of the MMCA debt. Her only "evidence" on this score is that she *did* receive a mortgage from a lender who did not utilize an Equifax credit report in making its decision.

her credit". (Doc. 49 at 18).[6] Even if the testimony was specific enough to sustain a claim for damages, it includes all of her health and other problems resulting the identity theft, rather than just those caused by Equifax in reporting (or failing to reinvestigate) the MMCA debt. In addition, the problems she describes extend back six years – far beyond the statute of limitations for the claims in this case.

### Reinvestigation

To prevail on a claim for 15 U.S.C. § 1681i(a), a consumer must show that (1) the consumer's credit report contains inaccurate or incomplete information; (2) the consumer notified the credit reporting agency of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) the agency failed to respond or conduct a reasonable reinvestigation of the disputed items; (5) the failure to reinvestigate caused the consumer to suffer out-of-pocket losses or intangible damages such as humiliation or mental distress. *Thomas v. Trans Union LLC*, 197 F.Supp.2d 1233 (D.Or. 2002). In her response to the motion for summary judgment, Bermudez blends together this cause of action with the preceding one, essentially arguing that Equifax failed to follow reasonable procedures in preparing her reports and in conducting its reinvestigation, thereby rendering the latter unreasonable. However, as noted above, Bermudez has not presented any evidence that Equifax failed to act reasonably or that Bermudez suffered damages as a result. Accordingly, Bermudez's reinvestigation claim fails for the same reasons as her failure to use reasonable procedures claim.

---

[6]Bermudez contends that other witnesses whose names have been produced to Equifax can testify on this subject, but Bermudez offers no affidavits or other evidence from them.

Wilfulness

Thus, Bermudez has failed to show that Equifax failed to comply with any provision of the FCRA. This is obviously fatal to Count V, Bermudez's claim that Equifax willfully or intentionally failed to comply with the requirements of the Act. In addition, the FCRA preempts any claim for common law defamation (Count VI) based on a credit report unless the inaccurate information was furnished with malice or willful intent to injure the plaintiff. 15 U.S.C. § 1681h(e). Bermudez has no evidence of such malice or willful intent on the part of Equifax.

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 40) filed by the Defendant, Equifax Information Services, LLC, is **GRANTED**. The Clerk is directed to enter judgment in favor of Equifax and close the case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 15, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party